# United States District Court
## for the
## Southern District of New York

*In re Sears Holdings Corporation, et al.,*
Debtors

| | |
|---|---|
| Sears Holdings Corporation, *et al.*,[1]<br><br>vs.<br><br>ESL Investments, Inc.;<br>Wilmington Trust, National Association; and<br>Cyrus Capital Partners, L.P., | Case Number<br><br>19-cv-08002 |

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEBTORS' MOTION TO STAY 506(C) APPEAL PENDING
RESOLUTION OF SECOND-LIEN HOLDERS' 507(B) APPEALS**

Sears Holdings Corporation and its debtor affiliates (collectively, the "**Debtors**") respectfully request that the Court stay consideration of the Debtors' appeal of the U.S. Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Court for the Southern District of New York's ("**Bankruptcy Court**") order on the Debtors' request to surcharge second-lien collateral pursuant to 11 U.S.C. § 506(c) ("**506(c) Appeal**") pending the Court's decision on the appeals of certain holders of the Debtors' second-lien notes ("**Second-Lien Holders**[2]") concerning the Bankruptcy Court's order on their request for additional collateral pursuant to 11 U.S.C. § 507(b) ("**507(b) Appeals**")[3].  The Debtors represent in support of this motion ("**Motion to Stay**") the matters set forth below.

## Preliminary Statement

The Court should grant this Motion to Stay the 506(c) Appeal in the interest of judicial economy and to preserve finite Estate resources.  Importantly, the Bankruptcy Court already determined after an extended evidentiary trial that there was no diminution of the Second-Lien Holders' collateral under Section 507(b).  The Second-Lien Holders' separate appeals of that decision are currently pending before this Court, and the Second-Lien Holders have an outstanding motion to certify a direct appeal of the Section 507(b) decision—but not the Section 506(c) decision—to the Second Circuit.  *See Motion of ESL for Certification of Direct Appeal to the United States Court of Appeals for the Second Circuit*, No. 7:19-cv-7660-VB (ECF No. 6) (the "**Certification Motion**").  Unless and until the 507(b) decision is overturned (which the Debtors submit there is no basis to do), an appeal of the Bankruptcy Court's ruling denying the imposition of a Section 506(c) surcharge on the Second-Lien Holders' collateral is unnecessary.  The Debtors' appeal of the denial of a Section 506(c) surcharge is, practically speaking, only relevant if the Bankruptcy Court's denial of diminution under Section 507(b) is overturned.

---

[2]  The Second-Lien Holders are as follows: ESL Investments, Inc. ("**ESL**"), Cyrus Capital Partners, L.P. ("**Cyrus**"), and Wilmington Trust, N.A. ("**Wilmington Trust**").
[3]  The Official Committee of Unsecured Creditors (the "**UCC**") has filed its own appeal of the 506(c) ruling and supports this Motion to Stay.  *See Notice of Appeal of the Official Committee of Unsecured Creditors of Sears Holdings Corp., et al.*, No. 7:19-cv-08237-VB (ECF No. 1).

The 506(c) Appeal involves whether a 506(c) surcharge should be imposed on the Second-Lien Holders' collateral. Accordingly, before this Court considers whether to impose a surcharge on the Second-Lien Holders' collateral under Section 506(c), it should conclusively resolve the threshold issue of whether the Bankruptcy Court correctly held that there was no diminution in the value of the collateral pursuant to Section 507(b). Importantly, there is no need to even decide the 506(c) Appeal if the Court upholds the Bankruptcy Court's ruling on the 507(b) Appeals.

For that reason, the Debtors requested that the Second-Lien Holders agree to stay the 506(c) Appeal—which the Debtors only filed to preserve their rights in the event of an adverse ruling in the 507(b) Appeals—pending resolution of the 507(b) Appeals. As the Second-Lien Holders prematurely argued in their Letter Motion to Consolidate (*see, e.g.*, Case No. 7:19-cv-08237-VB (ECF Nos. 9-10)), the Second-Lien Holders do not agree to a stay, and argue it would somehow be more efficient to brief these different issues at the same time, even though the 506(c) Appeal involves a distinct inquiry that would only need to be addressed if the Second-Lien Holders prevail on their 507(b) Appeals. Additionally, the Second-Lien Holders would suffer no prejudice if this Court were to grant a stay of the Debtors' own 506(c) Appeal pending the outcome of the 507(b) Appeals. Indeed, they too would conserve litigation expenses.

As such, the most efficient and economical path forward for the Court, the Debtors, their creditors and stakeholders, and the Second-Lien Holders, is to stay the 506(c) Appeal brought by the Debtors pending a final, non-appealable ruling on the 507(b) Appeals.

## Background

Shortly after the October 15, 2018 filing of their Chapter 11 cases (the "**Petition Date**"), the Debtors began a marketing process to pursue a going-concern sale of the Estate assets. To

finance this endeavor, and in exchange for the Debtors' use of cash collateral and priming of the Second-Lien Debt, the Debtors granted the Second-Lien Holders an adequate protection package, including certain section 507(b) superpriority claims "to the extent of the aggregate net diminution in value of their interests in the [Collateral]" in the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* ("**Final DIP Order**") (ECF No. 955), which was entered by the Bankruptcy Court on November 30, 2018.  *See* Declaration of Gregory Silbert in Support of the Debtors' Memorandum of Law in Support of Motion to Stay 506(c) Appeal Pending Resolution of Second-Lien Holders' 507(b) Appeals ("**Silbert Decl.**") Ex. A (Final DIP Order § O(i), ¶ 18(d)).

Ultimately, ESL, through Transform Holdco LLC ("**Transform**"), submitted the only qualified going-concern bid and purchased substantially all of the Debtors' assets through the Asset Purchase Agreement ("**APA**"), which purchase was approved by the Bankruptcy Court pursuant to the order dated February 8, 2019 after a trial from February 4–7, 2019, and which closed on February 11, 2019 (the "**Sale Date**").[4]  As part of the Sale, through which ESL (via Transform) purchased substantially all of the Debtors' assets, the Second-Lien Holders received dollar-for-dollar value on account of their $433.5 million credit bid (the "**Credit Bid**")—providing the Second-Lien Holders with substantially more in recovery for their collateral than they would have otherwise received if the Debtors had simply moved to liquidation after the Petition Date.

---

[4] *See* Silbert Decl. Ex. B (*Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507)) ("**Sale Order**").

Nevertheless, the Second-Lien Holders filed 507(b) claims in the Bankruptcy Court seeking a determination that their collateral was diminished from the Petition Date until the Sale Date and that they did not have adequate protection of their secured interests, as required by section 507(b) and the relevant provisions in the Final DIP Order. The Debtors argued in response that there was no diminution of the Second-Lien Holders' collateral and, in fact, their collateral was worth more as a result of the Debtors' sale efforts. Furthermore, even if there were a diminution in value of the Second-Lien Holders' collateral (which there was not), such diminution was fully eclipsed by applicable 506(c) surcharges on the value of that collateral.

With respect to the 507(b) issues, the Bankruptcy Court found that the Second-Lien Holders did not meet their burden of establishing a diminution in the value of their collateral and, thus, the Second-Lien Holders were not entitled to any additional liens on the Debtors' assets under 507(b) ("**507(b) Order**").[5] Indeed, in its analysis, the Bankruptcy Court made clear that the Second-Lien Holders fared better through their Credit Bid than they would have had the collateral not been used to pursue the going-concern transaction. The Bankruptcy Court separately denied the Debtors' motion seeking to impose a surcharge on the Second-Lien Holders' collateral under 506(c) ("**506(c) Order**").[6]

These two Orders gave rise to the appeals discussed above, with the Second-Lien Holders appealing the 507(b) Order, and the Debtors, thereafter, appealing the 506(c) Order to preserve their rights in the event the 507(b) Order is overruled (which it should not be). The Court consolidated the 507(b) Appeals, but this Court and—prior to reassignment—Judge Román's

---

[5] *See* Silbert Decl. Ex. C (*Order Determining the Amount of Second-Lien Holders' Section 507(b) Administrative Claims Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure* (ECF No. 4740)).
[6] *See* Silbert Decl. Ex. D (*Order Determining the Amount to Surcharge Second-Lien Collateral Pursuant To Section 506(c) of the Bankruptcy Code* (ECF No. 4793))*.*

Court have now twice declined to consolidate the 506(c) Appeal after determining those appeals "are not 'related' as that term is defined in Rule 13 of the SDNY Rules for the Division of Business." *See, e.g.*, *Order Granting in Part and Denying in Part Letter Motion to Consolidate Cases*, No. 7:19-cv-07660-VB (ECF No. 23) (consolidating cases 7:19-cv-07660, 7:19-cv-07697, and 7:19-cv-07782, but denying request to consolidate cases 7:19-cv-08002 and 7:19-cv-08237); *Order Terminating Letter Motion to Consolidate Cases*, No. 7:19-cv-08237-VB (ECF No. 10) (denying request to consolidate 506(c) Appeal with 507(b) Appeals). Further, the Second-Lien Holders' Certification Motion did not seek to certify the 506(c) Appeal,[7] but its Letter Motion to Consolidate now requests consolidation and direct certification of all of the appeals directly to the Second Circuit. *See Letter Motion to Consolidate Cases*, No. 7:19-cv-08237-VB (ECF No. 9).

## Jurisdiction

This Court has jurisdiction over the Motion to Stay pursuant to 28 U.S.C. § 158(a).

## Relief Requested

By this Motion to Stay, the Debtors request entry of an order staying consideration of the Debtors' 506(c) Appeal pending a final, non-appealable determination of the Second-Lien Holders' 507(b) Appeals.

## Relief Requested Should be Granted

The Court has the inherent power to control the disposition of an action in the interests of economy of time for itself and for the litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Sensient Colors, Inc. v. Kohnstamm*, 2008 WL 11456113, at *1 (S.D.N.Y. 2008). A stay

---

[7] The Debtors have objected and will continue to object to both consolidation and direct certification of the 507(b) Appeals and the 506(c) Appeal. Further, the Second-Lien Holders have not briefed the question of certification of the 506(c) Appeal.

Page 6 of 9

WEIL:\97175900\15\73217.0004

is warranted where the benefits to the parties, the court, and third parties from a stay outweigh any prejudice. *See Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

In evaluating the benefits of a stay, courts have shown a strong interest in avoiding the unnecessary expenditure of resources by the court and the parties. *Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*, 2012 WL 2865485, at *1 (S.D.N.Y. July 10, 2012), *aff'd*, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary."). Of particular concern is the conservation of the finite resources that make up the Debtors' Estate. *See In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y 1999) ("It is . . . in the interest of both creditors and the debtor for this Court to suspend any further proceedings in this case in order to conserve the modest resources of its estate"). It is in the interest of the parties, the Court, and other creditors to protect the Estate from incurring unnecessary litigation expenses and to assure that Estate assets are used to pay creditors of the Estate. *In re Secrest*, 453 B.R. 623, 629 (Bankr. E.D. Va. 2011).

Granting the Motion to Stay avoids expending unnecessary judicial resources and finite Estate assets by allowing the parties to wait to brief the 506(c) Appeal issues until it becomes necessary, if at all, by this Court's decision on the 507(b) Appeals issues. *See In re Duratech Indus., Inc.*, 241 B.R. at 296. The surcharge question raised in the 506(c) Appeal will not need to be addressed unless and until this Court finds that there has been a diminution in the value of the Second-Lien Holders' collateral under 507(b) that necessitates a 506(c) surcharge.

Since the issues present in the 506(c) Appeal do not need to be addressed until the 507(b) Appeals are resolved, it is in the best interests of the Debtors, the Second-Lien Holders, other creditors, the Court, and the public to stay consideration of the 506(c) Appeal pending

WEIL:\97175900\15\73217.0004

resolution of the 507(b) Appeals. *See Estate of Heiser,* 2012 WL 2865485, at *4. First, by waiting until the 507(b) Appeals are decided before considering the 506(c) Appeal, the Debtors avoid spending limited Estate resources to brief and argue the 506(c) Appeal before it is necessary for them to do so. Should the Court rule against the Second-Lien Holders in connection with their 507(b) Appeals, there will be no need for the Debtors to continue the 506(c) Appeal and the Estate resources that would otherwise have been spent on the 506(c) Appeal will instead inure to the benefit of creditors to the Estate.

Furthermore, staying the 506(c) Appeal would conserve judicial resources. Under the stay proposed by the Debtors, this Court could potentially avoid having to resolve the 506(c) Appeal altogether.

Finally, the Second-Lien Holders will face no prejudice if the Motion to Stay is granted. In fact, the Second-Lien Holders will benefit from not having to expend resources to brief the 506(c) issues before they need to be addressed. In the end, the 506(c) Appeal is a protective appeal that the Debtors are interested in pursuing only in the event that the Second-Lien Holders prevail in their 507(b) Appeals. It would make little sense for the Second-Lien Holders to insist that they have an immediate opportunity to litigate the Debtors' separate, protective appeal.

For the reasons stated above, the Debtors' Motion to Stay should be granted.

Dated:  October 8, 2019
        New York, New York

                                             **WEIL, GOTSHAL & MANGES LLP**

                                             */s/ Gregory Silbert*
                                        Ray C. Schrock, P.C.
                                        David J. Lender
                                        Gregory Silbert
                                        Jared R. Friedmann
                                        Sunny Singh

                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007

                                        -and-

                                        Paul R. Genender (*pro hac vice pending*)
                                        200 Crescent Court, Suite 300
                                        Dallas, Texas  75201
                                        Telephone: (214) 746-7877
                                        Facsimile:  (214) 746-7777

                                        *Attorneys for Debtors*