UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN RE:

SEARS HOLDINGS CORPORATION, et al.,
                               Debtors.
--------------------------------------------------------------:
SEARS HOLDINGS CORPORATION, et al.,
                              Appellants,
v.

ESL INVESTMENTS, INC., et al.,
                              Appellees.
--------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER**

19 CV 8002 (VB)

Briccetti, J.:

      Appellant Sears Holdings Corporation, its debtor affiliates (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors of Sears Holdings Corporation (the "UCC"), appeal from an August 8, 2019, Order of the Bankruptcy Court (Hon. Robert D. Drain, Judge) denying the Debtors' request to surcharge second-lien collateral pursuant to 11 U.S.C. § 506(c) (the "506(c) Appeals"). (Case No. 18-23538, Doc. #4793).

      Before the Court is the Debtors' motion to stay their appeal.[1] (Doc. #17).

      For the reasons set forth below, the Debtors' motion for a stay is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

      On October 15, 2018, Sears Holdings, which owned Sears and Kmart, filed for Chapter 11 protection in federal bankruptcy court. Thereafter, ESL Investments, Inc. ("ESL") submitted a qualified going-concern bid to purchase substantially all of the Debtors' assets. That sale was

---

[1] The UCC joins in the Debtors' request. (Doc. #20 ("UCC Br.")).

approved by the bankruptcy court on February 8, 2019, and the sale closed on February 11, 2019. Sears Holdings's assets were then moved into Transform Holdco LLC, a new entity controlled by ESL.

Following a two-day hearing on July 23 and 31, 2019, Judge Drain held: (i) there was no diminution in the value of collateral of certain holders of the Debtors' second-lien notes (the "Second-Lien Holders") after the Petition Date, and therefore the Second-Lien Holders were not entitled to Section 507(b) superpriority claims; and (ii) the Debtors were not owed a surcharge on the Second-Lien Holders' collateral pursuant to Section 506(c). On August 5, 2019, the bankruptcy court entered an "Order Determining the Amount of Second-Lien Holders' Section 507(b) Administrative Claims" (the "507(b) Order"). On August 8, 2019, the bankruptcy court entered a separate "Order Determining the Amount to Surcharge the Second-Lien Collateral Pursuant to Section 506(c) of the Bankruptcy Code" (the "506(c) Order").

Beginning on August 15, 2019, the Second-Lien Holders—ESL, Cyrus Capital Partners, L.P., and Wilmington Trust—filed notices of appeal of the 507(b) Order (the "507(b) Appeals"). On August 27, 2019, the Debtors filed a notice of appeal of the 506(c) Order. The Debtors moved to stay their 506(c) Appeal pending the determination of the 507(b) Appeals, also before this Court. The Debtors' 506(c) Appeal was later consolidated with the UCC's appeal from the 506(c) Order.

## DISCUSSION

In deciding whether to grant a stay, courts in this circuit consider five factors:

(1) the private interests of the [appellants] in proceeding expeditiously with the civil litigation as balanced against the prejudice to the [appellants] if delayed; (2) the private interests of and burden on the [appellees]; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

2

Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).[2]

Applying these factors, the Court concludes a stay is warranted because the benefit of a stay to the Debtors and the interest of judicial economy outweigh the burden on the Second-Lien Holders.

The first factor weighs in favor of a stay. Here, the Debtors moved to stay their own appeal. In fact, the Debtors state that they appealed the 506(c) Order only to "preserve their rights in the event of an adverse ruling in the 507(b) Appeals—pending resolution of the 507(b) Appeals." (Doc. #18 ("Debtors Br.") at 3). Moreover, the Court credits the Debtors and the UCC's argument that staying the 506(c) Appeals would "avoid the unnecessary diversion of estate assets" that would be expended to litigate a potentially unnecessary appeal. (UCC Br. at 2; see also Debtors Br. at 8).

With respect to the second factor, the parties agree that the outcome of the 507(b) Appeals will determine whether the 506(c) Appeals will be litigated. Indeed, if the Court upholds Judge Drain's ruling in the 507(b) Appeals, the Debtors and the UCC have said they would drop the 506(c) Appeals.

The third factor, judicial economy, also will be served by a stay. If this Court upholds Judge Drain's Order in the 507(b) Appeals, the 506(c) Appeals of the bankruptcy court's ruling "denying the imposition of [the] surcharge on the Second-Lien Holders' collateral is unnecessary." (Debtors Br. at 2). Thus, judicial economy would be served by avoiding proceedings on a potentially unnecessary appeal.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

With respect to the fourth and fifth factors, neither the Debtors nor the Second-Lien Holders identify any third parties or compelling public interests that would be affected one way or the other by a stay.[3]

The Second-Lien Holders oppose a stay on two grounds. First, the Second-Lien Holders argue a stay of the 506(c) Appeals would result in "potentially two rounds of litigation, duplicating efforts and costs" because the 507(b) Appeals and 506(c) Appeals are intertwined. (Doc. #22 ("Second-Lien Holders Br.") at 8). Second, the Second-Lien Holders argue bifurcation of the appeals could reduce the amount to which they are entitled if they prevail on the 507(b) Appeals.

The Court rejects both arguments. In the first place, the Second-Lien Holders' opposition to a stay hinges on their prevailing on the 507(b) Appeals. The Court will not presuppose such an outcome given that the parties have not yet briefed the 507(b) Appeals. Moreover, while the Court is skeptical that the issues in the 507(b) and 506(c) Appeals are intertwined—they rely on different evidence and legal standards and arise from different orders—to the extent there is overlap in briefing, the parties will be able to rely on such materials and so will the Court.

In sum, exercising its inherent power to regulate its docket, the Court concludes that the benefits of a stay and the interests of judicial economy outweigh any burden on or prejudice to the

---

[3] One section of the Second-Lien Holders' brief is titled, "The Interests of Other Parties Will Be Harmed by the Stay." (Second-Lien Holders Br. at 10). Despite that heading, the Second-Lien Holders use that section to argue in favor of their motion for certification of direct appeal, which this Court resolved in a different case. See In re: Sears Holding Corp., 19-cv-7660 (Doc. #40) (Order denying Second-Lien Holders' motion for certification of direct appeal). Further, nothing in that section raises the possibility of harm to other parties.

4

Second-Lien Holders. Accordingly, the Debtors' motion for a stay of the instant consolidated bankruptcy appeal pending resolution of the 507(b) Appeals is granted.

## CONCLUSION

The motion to stay is GRANTED.

The Clerk is directed to terminate the motion (Doc. #17) and stay this case.

Dated: October 29, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge